The document below is hereby signed.

Signed: December 26, 2017



_S. Martin Teel, Jr._
_signature_

S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | Case No. 12-00637 |
| GERALD HENNEGHAN, | ) | (Chapter 7) |
| | ) | Not for publication in |
| Debtor. | ) | West's Bankruptcy Reporter. |

MEMORANDUM DECISION AND ORDER DENYING
MOTION SEEKING TO REOPEN CASE TO PURSUE MOTION
FOR CIVIL CONTEMPT REGARDING COLLECTION OF ALLEGEDLY
DISCHARGED ELECTRIC BILL AND SEEKING TO PURSUE OTHER RELIEF

The debtor, Gerald Henneghan, has filed an *Emergency Motion to Reopen Bankruptcy Case; for Contempt of Discharge Injunction for Damages; for Sanctions and for Court Ordered Referral to Attorney General Jefferson Beauregard Sessions III for Criminal and Criminal Civil Rights Investigation* (Dkt. No. 45), seeking to reopen his bankruptcy case in order to pursue various requests.

I

As in the case of an earlier motion to reopen, the instant motion to reopen includes a request for referral to the Attorney General to address certain alleged violations of the law. As in the case of Henneghan's prior motion to reopen, that request will

be denied and does not warrant further discussion.  Henneghan is admonished not to file a further motion to reopen seeking to pursue such a request.

## II

The motion to reopen principally seeks to reopen the case so that Henneghan can pursue a motion for civil contempt regarding a creditor's acts to collect an allegedly discharged electric bill.  The motion to reopen was served on PEPCO Holdings, Inc. and Exelon Corporation.  However, as Henneghan was alerted by an earlier filing (Dkt. No. 43) by Potomac Electric Power Company, there is only a single electric utility in the District of Columbia operating under a tariff approved by the D.C. Public Service Commission, and that is Potomac Electric Power Company, which trades under the name Pepco.  Any motion to reopen regarding efforts of Potomac Electric Power Company to collect a discharged debt ought to be served on that entity and ought to be directed against that entity.

## III

As the court noted in its *Memorandum Decision and Order Denying Motions Seeking to Reopen the Case and Other Relief* dated December 6, 2017, and entered December 7, 2017 (Dkt. No. 42):

> The Bankruptcy Code grants bankruptcy courts authority to reopen a case "to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). This is a discretionary authority left to the bankruptcy courts.  *In re Covelli*, 550 B.R. 256, 263 (Bankr. S.D.N.Y. 2016).  "The court has discretion not to reopen

>   a case to consider a debtor's motion for contempt when the allegations of that motion fail to establish a violation of the discharge injunction." *In re Kernacs*, No. 09-00783, 2017 WL 2407856, at *3 (Bankr. D.D.C. June 6, 2017).
>   Under 11 U.S.C. § 727(b), except as provided in 11 U.S.C. § 523(a), a debtor who receives a discharge under chapter 7 is discharged from "all debts that arose before the date of the order for relief under this chapter." The order for relief arose upon the debtor's filing his petition commencing this bankruptcy case. 11 U.S.C. § 301(b); *Malik v. Palisades Collection, L.L.C.*, No. 1:07-cv-52, 2008 WL 2397628, at *2 (W.D. Mich. June 10, 2008). This means that the discharge only applies to debts that were incurred prior to the filing of the petition. The debtor filed the petition for this case on September 20, 2012, thus only debts incurred before that filing on September 20, 2012, are discharged. The relief for violation of the discharge injunction is civil contempt. *Covelli*, 550 B.R. at 269. However, "[c]ivil contempt requires a showing of a violation of an injunction by clear and convincing evidence." *Kernacs*, 2017 WL 2470856, at *3. The debtor must show that the creditor had actual or constructive knowledge of the discharge order and did not comply with it. *Covelli*, 550 B.R. at 269.

The motion to reopen makes only conclusory allegations regarding Pepco having acted to collect a discharged debt, and two of the acts he pointed to as violating the discharge injunction occurred when no discharge injunction was in place and thus could not constitute a violation of the discharge injunction.  The court will require that any further motion to reopen include as an exhibit a proposed motion to hold Pepco in civil contempt that he wishes to pursue if the case is reopened.  That proposed motion must include detailed, concrete allegations of fact establishing that Pepco acted in a way that violated the discharge injunction (not merely conclusory assertions that Pepco violated the

3

discharge injunction).

The motion to reopen fails to show that Henneghan could file such a motion.  First, the motion fails to show that Pepco attempted post-discharge to collect on an account owed for prepetition services versus an account for services incurred postpetition.  Attached to Henneghan's earlier motion to reopen (Dkt. No. 40, at 8) is what Henneghan alleged to be a portion of an answer filed by Pepco in response to Henneghan's complaint with the DC Public Service Commission which referred to a letter purportedly sent by Henneghan to Pepco after his father's death requesting that he be made the account holder of his father's account.  As the court noted in its *Memorandum Decision and Order Denying Motions Seeking to Reopen the Case and Other Relief* (Dkt. No. 42, at 5 n.2), "[t]he alleged answer notes that the debtor has two accounts, a pre-bankruptcy and post-bankruptcy account." Nothing in Henneghan's current motion and nothing in his former motion indicates that Pepco attempted post-discharge to at to collect amounts Henneghan incurred prepetition.  This information is essential to determining whether Henneghan has a claim for violation of the discharge injunction.

Henneghan claimed in his earlier motion (Dkt. No. 40, at 5) that he never sent to Pepco the letter requesting to be made the account holder of his father's account.  However, as the court noted in its *Memorandum Decision and Order Denying Motions*

4

*Seeking to Reopen the Case and Other Relief* (Dkt. No. 42, at 5 (internal footnote omitted)):

> Even if the court assumes that the letter is fraudulent, the debtor's allegations and evidence presented do not show that Pepco is charging the debtor for any debt he incurred prior to the debtor's petition date. Only if the debt being collected arose prepetition could there be a violation of the discharge injunction.

Thus, even if the court disregards the letter entirely, Henneghan has not demonstrated that he has a valid claim. Moreover, the bill that Henneghan attaches to the present motion as "Exhibit A Pre-Petition PEPCO Bill" is addressed to:

> GERALD HENNEGHAN
> ESHMEL HENNEGHAN DECEASED

for service to 5814 Clay Street, NE, Washington, D.C. This bill was issued prepetition and therefore Pepco's act of sending it to Henneghan could not have violated the discharge injunction. Furthermore, the bill does not necessarily show a billing for a prepetition debt Henneghan owed: the bill is consistent with his being sent a bill for electric services obtained by Eshmel Heneghan, deceased, and for which Henneghan may have been acting in a representative capacity (for example, as executor of a decedent's estate). Nothing in the motion to reopen identifies the account number on the bill as an account number of Henneghan. Moreover, there is no allegation that it was Henneghan who owned 5814 Clay Street when the services at issue were obtained prepetition.

Second, the additional exhibits appended to the current motion to reopen are e-mails sent in early 2013, which each tell Henneghan that he could view his most recent statement, and indicate the amount due, but do not provide an account number. *See* Dkt. No. 45. He describes these exhibits, in only conclusory terms, as "Post Petition PEPCO Bill which includes Pre-Petition PEPCO Bill debt" and he fails to include the actual statements. Two of the e-mails (notifying Henneghan of amounts due of, respectively, $6,165.15 and $6,636.63) were issued after the case was closed and when no discharge had been entered, so those e-mails could not constitute a violation of the discharge injunction that arose only later upon the case being reopened and Henneghan's receiving a discharge. The last e-mail was sent on April 25, 2013, after the discharge was entered on April 8, 2013, but it indicates an amount due of only $2,419.06 versus an amount due in excess of $6,000.00 (with the reduced amount possibly reflecting Pepco's limiting the amount due to the amount arising from any debt incurred postpetition, which would constitute a non-discharged debt and which would not be subject to the discharge injunction).

Finally, Henneghan fails to allege facts establishing that Pepco ever received payment of a discharged debt after entry of the discharge or that Pepco is currently trying to collect any discharged debt. Henneghan's allegations fail to establish any monetary harm he suffered due to any act of Pepco, and without

Henneghan having pled damage in non-conclusory terms, it would not be appropriate to impose compensatory contempt sanctions.

Coercive contempt sanctions are of a prospective nature (imposing a fine or incarceration if the alleged contemnor fails to cease its contemptuous conduct).  If Pepco is not now attempting to collect a discharged debt, coercive contempt sanctions would not be appropriate.  Henneghan has not pled any facts establishing that he is entitled to either compensatory contempt sanctions or coercive contempt sanctions.

Punitive damages are not available as a civil contempt sanction for past contempt.  To the extent the motion to reopen seeks to pursue criminal contempt, reopening of the case for that purpose must be denied for various reasons.  *See Griffith v. Oles (In re Hipp, Inc.)*, 895 F.2d 1503, 1506–1521 (5th Cir. 1990); *Va. Hosp. Center-Arlington Health Sys. v. Akl (In re Akl)*, 2008 WL 5102277 (Bankr. D.D.C. 2008).

Because civil contempt must be established by clear and convincing evidence, the instant motion to reopen fails to show that Henneghan has a basis for pursuing a motion to hold Pepco in civil contempt.  Henneghan has waited for four years before filing his motion to reopen based on e-mails sent to him in early 2013.  If that delay has made it impossible for him to provide clear and convincing evidence of contempt based on a violation of the discharge injunction, he has only himself to blame.

IV

In light of the foreground, it is

ORDERED that the debtor's *Emergency Motion to Reopen Bankruptcy Case; for Contempt of Discharge Injunction for Damages; for Sanctions and for Court Ordered Referral to Attorney General Jefferson Beauregard Sessions III for Criminal and Criminal Civil Rights Investigation* (Dkt. No. 45) is DENIED. It is further

ORDERED that any further motion to reopen to pursue civil contempt sanctions against Pepco must include as an exhibit the proposed motion to hold Pepco in civil contempt that the debtor wishes to pursue if the case is reopened, and that proposed motion must include detailed, non-conclusory detailed allegations of fact establishing

    (1) that Pepco acted in a way that violated the discharge injunction; and

    (2) that the debtor has suffered damages for which compensatory contempt sanctions are recoverable or that Pepco is continuing to act in a way that violates the discharge injunction.

                                    [Signed and dated above.]

Copies to: Debtor; e-recipients of orders;

| | |
|---|---|
| Exelon Corporation<br>Corporate Creation Network<br>1629 K Street, NW<br>Suite 300<br>Washington, D.C. 20006 | PEPCO Holdings, Inc.<br>Corporate Creation Network<br>1629 K Street, NW<br>Suite 300<br>Washington, D.C. 20006 |